In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00098-CV


______________________________








IN THE INTEREST OF HALCYON SADBERRY, 


A CHILD








 


On Appeal from the 310th Judicial District Court


Harris County, Texas


Trial Court No. 86-38359




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Rosalyn Sadberry appeals from an order modifying conservatorship of a minor child, Halcyon
Sadberry. Sadberry argues that we should reverse the order and remand the case to the trial court
because the court did not provide her counsel with notice of the trial setting and thus erred by
proceeding with the hearing, and because the trial court erred by overruling her motion for new trial
based on lack of notice.

 At the hearing on modification, counsel for Rosalyn Sadberry did not appear. Counsel for
Earl Sadberry, the father, informed the court that he had sent opposing counsel a notice by facsimile
on January 19, 2001, reminding him of the final trial date, and had previously sent him a notice by
the same method. After a hearing, the trial court entered permanent orders in accordance with
temporary orders that had previously been entered on October 25, 2000. The court then entered a
"Final Default Modified Order." 

 At the hearing on Rosalyn Sadberry's motion for new trial, facsimile transmissions sent to
her counsel, Joseph Onwuteaka, were introduced into evidence. The court noted that the title line
on the first page of the facsimile transmission referenced a different case. She then reviewed the 
following nine pages, which consisted of a certificate of discovery, a request for production, and a
set of interrogatories, each of which correctly referred to this case by both name and number. The
evidence also shows that the present case was the only case in which the two counsel in this case
were opponents. Onwuteaka admitted receiving the facsimile transmission, but argued that because
the first page of the document referenced a different case, the notice was inadequate. The trial court
disagreed and overruled the motion for new trial.

 Rosalyn Sadberry first contends that the trial court erred by failing to send her counsel notice
of the trial setting and that the court erred by proceeding to trial without such notice. (1) At the default
hearing, the trial court stated affirmatively that Onwuteaka had been served notice of the hearing and
had failed to appear. Opposing counsel confirmed this and also stated that she had sent Onwuteaka
a notice on January 19, 2001, by facsimile reminding him of the trial date and that she had previously
sent him a notice by the same method. (2) No evidence was introduced to show that notice was not
given to Onwuteaka. Accordingly, we cannot conclude that the trial court erred by granting the
default judgment. 

 In her next issue, Rosalyn Sadberry argues that the trial court abused its discretion by
overruling her motion for new trial based on lack of notice. In this argument, she relies on the
requirement that once a defendant has made an appearance in a cause, she is entitled to notice of the
trial setting as a matter of due process under the Fourteenth Amendment to the United States
Constitution, as set forth in Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 108 S.Ct. 896, 99
L.Ed.2d 75 (1988); LBL Oil Co. v. Int'l Power Servs., Inc., 777 S.W.2d 390, 390-91 (Tex. 1989).

 The trial court's decision on a motion for new trial after a post-answer default judgment is
subject to review for abuse of discretion. Cliff v. Huggins, 724 S.W.2d 778, 778-79 (Tex. 1987). 
Generally, that discretion must be guided by a three-part test. To grant the motion for new trial, the
court must determine that: (1) the defendant's failure to appear before judgment was not intentional
or the result of conscious indifference on the defendant's part, but was due to a mistake or accident;
(2) the motion for new trial sets up a meritorious defense; and (3) the motion is filed at a time when
its granting would not result in a delay or otherwise injure the plaintiff. Craddock v. Sunshine Bus
Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). 

 A defendant who has made an appearance in a cause is entitled to notice of the trial setting
as a matter of due process under the Fourteenth Amendment to the United States Constitution. LBL
Oil Co. v. Int'l Power Servs., Inc., 777 S.W.2d at 390-91. A defendant who does not receive notice
of a post-answer default judgment proceeding is deprived of due process. Id. A party who has been
denied due process through lack of notice of a trial setting satisfies the first Craddock factor and is
not required to meet the remaining requirements to be entitled to a new trial. Lopez v. Lopez, 757
S.W.2d 721, 723 (Tex. 1988) (holding that Peralta eliminated the second requirement as a matter
of constitutional law in notice cases); Mahand v. Delaney, 60 S.W.3d 371 (Tex. App.-Houston [1st
Dist.] 2001, no pet. h.); Smith v. Holmes, 53 S.W.3d 815, 817-18 (Tex. App.-Austin 2001, no pet.
h.); see also Mosser v. Plano Three Venture, 893 S.W.2d 8, 12-13 (Tex. App.-Dallas 1994, no writ)
(all holding that the third requirement is necessarily also eliminated in notice cases). If the party has
no notice of the trial or hearing, then the party is entitled to have the default judgment set aside
without consideration of the second and third requirements of Craddock. See LBL Oil Co. v. Int'l 
Power Servs. Inc., 777 S.W.2d at 390-91 (reviewing a notice defect in the context of a post-answer
default judgment and reviewing the due process claim pursuant to Peralta and without reference to
any other Craddock requirement).

 A form of notice was given in this case; Rosalyn Sadberry argues that it was inadequate. 
Thus, this situation differs from LBL, because the record in LBL established that the party had neither
actual nor constructive notice of the hearing.

 Due process only requires reasonable notice under the circumstances. Peralta v. Heights
Med. Ctr., Inc., 480 U.S. 80; Withrow v. Schou, 13 S.W.3d 37, 42 (Tex. App.-Houston [14th Dist.]
1999, pet. denied); Walker v. Brodhead, 828 S.W.2d 278, 280 (Tex. App.-Austin 1992, writ denied). 
We have previously held that when a copy of a letter requesting a specific date for trial or hearing
is sent to the opposing party, the letter sufficiently informs the opposing party, putting them on
notice. Withrow v. State Farm Lloyds, 990 S.W.2d 432, 435-36 (Tex. App.-Texarkana 1999, pet.
denied). In this case, the trial court was presented with evidence of the facsimile transmission and
with testimony by counsel that she had discussed the case with someone in opposing counsel's office
in connection with a possible settlement during mid-February, shortly before the hearing.

 The trial court serves as fact-finder at a hearing on a motion for a new trial and, accordingly,
is the sole judge of the witnesses' credibility. See Harmon Truck Lines, Inc. v. Steele, 836 S.W.2d
262, 265 (Tex. App.-Texarkana 1992, writ dism'd); Jackson v. Mares, 802 S.W.2d 48, 51 (Tex.
App.-Corpus Christi 1990, writ denied). Although Onwuteaka attempted to show that he had not
received notice of the setting, it is clear that the trial court did not accept his position. See Hanners
v. State Bar of Texas, 860 S.W.2d 903, 908 (Tex. App.-Dallas 1993, no writ). Although a slight
excuse for failure to appear is sufficient, the first Craddock requirements are not satisfied if the
evidence shows that the appellant ignored notice of the trial date or avoided notice and failed to
make inquiries. See Sharpe v. Kilcoyne, 962 S.W.2d 697, 701 (Tex. App.-Fort Worth 1998, no
pet.); O'Connell v. O'Connell, 843 S.W.2d 212, 217-18 (Tex. App.-Texarkana 1992, no writ).

 The test for abuse of discretion is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court's action, but whether the court acted without
reference to any guiding rules or principles. The mere fact that a trial court may decide a matter
within its discretionary authority differently than an appellate court does not demonstrate such an
abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985). 

 As set out in more detail above, the evidence on the motion for new trial indicates that
counsel did receive notice, although he believed the notice was legally inadequate because it was
contained in "discovery papers." The evidence also shows that counsel was aware that this was the
only case pending between him and counsel for Earl Sadberry. Rosalyn Sadberry did not satisfy the
first Craddock factor because, with evidence that she had received notice of the impending trial, and
in the absence of other intervening facts, the trial court could conclude that she intentionally or with
conscious indifference failed to appear or otherwise participate in the trial. Thus, there is evidence
from which the court could reasonably conclude that the notice given by opposing counsel was
adequate to put counsel on notice of the impending hearing and that his failure to appear was
conscious and deliberate. We conclude that the trial court did not abuse its discretion by failing to
grant Rosalyn Sadberry's motion for new trial.

 The judgment is affirmed. 


 William J. Cornelius

 Chief Justice


Date Submitted: March 28, 2002

Date Decided: April 30, 2002


Do Not Publish 




 

1. The Rules of Civil Procedure do not require the trial court to send the notice. Rule 246 of
the Texas Rules of Civil Procedure requires the clerk to give notice of settings to any "non-resident
attorney upon request by mail from such attorney, accompanied by a return envelope properly
addressed and stamped." Tex. R. Civ. P. 246. There is nothing in the record to show that this rule
applies or that its requirements were met, and the record affirmatively shows that Onwuteaka
maintains his office in Harris County. Rule 246 requires that notice be given, but does not require
a specific method that must be used by all courts to provide that notice. 
2. Tex. R. Civ. P. 21a provides that all notices, other than citation, may be served by
delivering a copy of the notice or document to the party, his duly authorized agent, or his attorney
of record, and that electronic transmission is an acceptable means of service.


 UnhideWhenUsed="false" Name="Medium List 1 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00055-CR

                                                ______________________________

 

 

                                         JOHN BOZEMAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 08CR-042

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            The original
judgment of this Court affirmed the conviction of John Bozeman.  The Texas Court of Criminal Appeals granted
Bozemans petition for discretionary review, vacated the judgment of this
Court, and remanded for further action in light of Geick v. State, 349 S.W.3d 542 (Tex. Crim. App. 2011), decided
subsequent to Bozeman v. State, 340
S.W.3d 515 (Tex. App.Texarkana 2011), judgment
vacated, No. PD-0839-11, 2011 WL
5375124 (Tex. Crim. App. Nov. 9, 2011). This opinion is issued in accordance
with the mandate of the Texas Court of Criminal Appeals in Bozeman v. State, No. PD-0839-11, 2011 WL 5375124 (Tex. Crim. App.
Nov. 9, 2011).

             Bozeman was indicted on the charge of theft by
deception[1]for
the theft of nine pieces of jewelry from Cathy Hobson.  After a bench trial, Bozeman was found guilty
and was sentenced to eighteen months confinement in the Texas Department of
Criminal JusticeState Jail Division.[2]  On appeal, Bozeman claims that (1) the
judgment is not supported by constitutionally sufficient evidence; and (2) the
judgment is not supported by appropriate evidence of the value of the items
alleged to have been stolen.  Because the
verdict is not supported by legally sufficient evidence, we reverse the judgment
of the trial court and render a judgment of acquittal.

I.          BACKGROUND

 

            Bozeman
and Hobson went to school together and have known each other most of their
lives.  In July 2006, when Hobson was
preparing to move from a small house to a larger house next door, Bozeman
offered the use of his truck and trailer to assist in the move.  The moving process commenced on Monday July
17.[3]  Hobson testified that on that date, Bozeman
moved both of her jewelry boxes from the smaller house to the upstairs bedroom
of the larger house.  Bozeman was aware
of the location of the jewelry boxes because Hobson directed him to place them
in a drawer next to her bed.  At that
time, there was nothing missing from either of the jewelry boxes.[4]  

            On the
second day of the move, Tuesday July 18, Bozeman asked Hobson to take her son
to a baby-sitter, as Bozeman could not get any work done with the child underfoot.  Hobson agreed, and took her son to a friends
house a few blocks away.  Hobson returned
approximately forty-five minutes later, only to find that Bozeman was
gone.  Baffled by his disappearance,
Hobson called Bozeman on his cell phone only to be told that he was at Lowes
in Palestine purchasing a lawn mower for his father.[5]

            When
Hobsons husband arrived home from work on the evening of the 18th, Hobson
showed him what had been accomplished at their prospective new home.  When Hobson noticed that an antique music box
and an antique adding machine[6]
were both missing, she immediately went upstairs to check her jewelry
boxes.  Hobson discovered that some of
her jewelry was missing and filed a report with the local police that same
evening.  Hobson never questioned Bozeman
about the missing items of jewelry, as she suspected he was responsible for
their disappearance.  

            Approximately
three weeks later, when Hobson learned Bozeman was having work done on one of
his rings at Charles Dickens jewelry store in Palestine, she paid a visit to
Mr. Dickens.  After having been presented
with a copy of the police report, Dickens agreed to show Hobson several items
of jewelry Bozeman brought to the store. 
Hobson identified nine of those items of jewelry as belonging to
her.  At trial, Dickens testified that
Bozeman brought those nine items of jewelry into his store on July 19, 2006,
the day after Hobsons jewelry was reported missing.   Bozeman denies any involvement in the
disappearance of Hobsons jewelry; the jewelry boxes were dusted for
fingerprints, but no discernible prints were obtained. 

II.        ANALYSIS

 

            A.        The Evidence is Legally Sufficient to
Support the Finding of Unlawful            

                        Appropriation

 

            In his first
point of error, Bozeman generally claims the evidence is legally insufficient
to support the trial courts verdict.  In
reviewing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the jurys verdict to determine whether any
rational jury could have found the essential elements of the charged
offense.  Brooks v. State, 323 S.W.3d 893, 902, n.19 (Tex. Crim. App. 2010)
(4-1-4 decision) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 91718 (Cochran, J., concurring). 
We examine legal sufficiency under the direction of the Brooks opinion, while giving deference
to the responsibility of the jury to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819).

        Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]  The hypothetically correct jury charge sets
out the law, is authorized by the indictment, does not unnecessarily increase
the States burden of proof or unnecessarily restrict the States theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Id. 


            The
indictment states, in pertinent part, that Bozeman:

 

[O]n or about July 18, 2006[,] and before presentment of
this Indictment, in said County and State, did then and there:  unlawfully appropriate, by acquiring or
otherwise exercising control over property, to-wit:  Mens Yellow/gold 3 stone wedding band,
small yellow solitaire ring, Mens nugget solitaire ring, 3.7 mm wedding band,
Ladies 3 stone with sapphire accent ring, ladys 2 tone engagement ring, w/3
stones, Yellow gold coin ring w/3 stones, 5 oz gold eagle coin, Gold watch
chain and faub [sic], of the value of $1,500 or more but less than
$20,000, from Cathy Hobson, the owner thereof, without the effective
consent of the owner, namely, by deception, and with intent to deprive
the owner of the property.

 

            In making an analysis under the
hypothetically correct jury charge, we find that the indictment required the State
to prove that:  (1) John Bozeman (2) on
or about July 18, 2006, (3) in Houston County, Texas, (4) unlawfully
appropriated, by acquiring or exercising control over the listed items, (5)
having a value of $1500.00 or more but less than $20,000.00, (6) from Hobson
(7) by deception and (8) with the intent to deprive Hobson of the property.

            Here,
Bozeman claims that the States evidence is deficient in proving, beyond a
reasonable doubt, that Bozeman (1) unlawfully appropriated the property in
question, and (2) deceived Hobson.[8]  We initially examine the evidence of unlawful
appropriation of Hobsons jewelry by Bozeman. 
Bozeman points to his own testimony, which accounts for his acquisition
of the jewelry in question from sources other than Hobson.  First, Bozeman maintains that he purchased two
of the items of jewelry at a pawn shop in Crockett.  The record is not clear as to which two items
Bozeman claims were so purchased.  John
Smock, the owner of the pawn shop in Crockett, testified that he has known
Bozeman for fifteen years and that Bozeman has purchased several pieces of
jewelry from Smock over the years, similar to the rings depicted in States
exhibit seventeen (photograph of the nine items of jewelry located in Dickens
jewelry store).  Next, Bozeman testified
that the coin he is accused of stealing from Hobson (actually a .5 ounce coin
rather than a 5-ounce coin) was given to him by his father, Charles
Bozeman.  Charles Bozeman testified that
he purchased a 2000 Liberty gold coin for Bozeman in March 2001.  Bozeman testified that the wedding band
(otherwise not identified) was given to him by his father as well when his father
outgrew it.  

            Bozeman
contends that the remaining five items of jewelry he was convicted of stealing
from Hobson were items he purchased from a fellow by the name of Dennis
Denby.  Bozeman maintains that Denby sold
the items for Otis Johnson, who needed the money to pay his light bill. Denby
testified that in early August 2006, he introduced Bozeman to a fellow that had
some jewelry to sell.   Denby took the
man (identified by Bozeman as Johnson) to Bozeman, who purchased the
jewelry.  Bozeman introduced a sales
receipt at trial for these five items, dated August 7, 2006.  According to Bozeman, Denby signed the
receipt Dennis Denby sold for Otis Johnson on the date of the
transaction.  Denby testified that
Bozeman approached him a few days after the sale and asked him to sign the
receipt.

            Bozeman
maintains on appeal that the weakness of the States evidence, in conjunction
with the evidence accounting for Bozemans legal acquisition of the jewelry,
can lead only to the conclusion that the evidence failed to establish Bozemans
guilt beyond a reasonable doubt.  He
complains that the States evidence is largely circumstantial and that it
failed to eliminate any other reasonable alternative, such as the sale of the
jewelry to Bozeman by a third party.[9]  The lack of direct evidence is not
dispositive of the issue of Bozemans guilt. 
Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt.  Hooper, 214 S.W.3d at 13.   Furthermore, the standard of review on appeal
is the same for both direct and circumstantial evidence cases.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  

             As a reviewing court, it is our job to view
the evidence in the light most favorable to the verdict to determine whether
any rational fact-finder could have found the essential elements of the offense
beyond a reasonable doubt.  Further, we
defer to the finder of fact to resolve conflicts in the evidence and to
determine the credibility of that evidence. 
Here, the trial court was free to believe Hobsons testimony and to
discount the testimony of Bozeman and Denby. 
Given the fact that Dickens testified that Bozeman brought all nine
pieces of jewelry into his store on July 19, and the receipt for the sale of
five items of jewelry shown to have been purchased by Bozeman was signed on
August 7, it appears that this is exactly what the trial court did.  In viewing the evidence in the light most
favorable to the trial courts verdict, a rational fact-finder could have found
that Bozeman unlawfully appropriated jewelry belonging to Hobson.

            B.        The
Evidence Is Legally Insufficient to Support the Finding that the                                        Unlawful Appropriation Was Accomplished
by Deception

 

            Next, still
complaining of the legal sufficiency of the evidence, Bozeman claims that no
evidence was introduced showing any property belonging to Hobson was obtained
by means of deception.  Bozeman contends
that because the indictment alleged only one means of committing theftby
deceptionthe State was required to prove that particular means.  Bozeman argues that because there is no
evidence of deception, the evidence is legally insufficient to sustain his
conviction.  The State maintains that it
proved theft by deception as alleged in the indictment.  The issues, therefore, are (1) whether the
State was required to prove deception, where deception was alleged in the
indictment, and if so, (2) whether the State proved deception.[10]

            The issue of
whether the State was required to prove deception where deception was alleged
in the indictment was the subject of the Texas Court of Criminal Appeals
opinion in Geick v. State.  In that case, Geick was indicted for theft by
deception of a bulldozer.  The jury
charge allowed for a conviction without limiting the manner in which the theft
was committed, and Geick was found guilty as charged in the indictment.  Geick,
349 S.W.3d at 544.  

            On
appeal, the Fourteenth Court of Appeals acquitted Geick because there was no
evidence of deception.  The Texas Court
of Criminal Appeals affirmed, holding that when a statute lays out several
alternative methods of committing the offense, and the indictment alleges only
one of those methods, the law as authorized by the indictment is limited to
the method specified in the indictment. 
Id. at 545 (citing Gollihar v. State, 46 S.W.3d 243, 25455
(Tex. Crim. App. 2001)).   In so holding,
the high court rejected the States argument that the term deception as a
means of committing theft was merely a definition, rather than an element of
the offense, and therefore should not be a part of the hypothetically correct
jury charge.  In this case, therefore,
the State was required to prove deception since it alleged deception in the
indictment.[11] 

             The testimony here indicates Bozeman
volunteered his services to help Hobson move her belongings from one house to
the other.  Hobson testified that she never
asked Bozeman to help with the move.  After
the move commenced, Bozeman told Hobson that he could not work with her son
there because he was in the way.  He
asked Hobson to take her son to a baby-sitter, which she did.  By reason of this request, Bozeman gained the
opportunity to steal Hobsons jewelry, which he had placed in a drawer next to
Hobsons bed on the previous day.  

            When Hobson
returned from taking her son to the baby-sitter, Bozeman was gone.  Bozeman did not tell Hobson he would be leaving,
and it was her understanding that Bozeman intended to help her move that dayhence
the request to take her son to the baby-sitter. 
The State argues that Bozeman had no intention of working all day, but
was merely creating an opportunity to carry out the theft of Hobsons jewelry,
which constitutes legally sufficient evidence to prove theft by deception.  We disagree.

            A person
commits theft if he unlawfully appropriates property with intent to deprive
the owner of property.  Tex. Penal Code Ann. § 31.03(a); Riley v. State, 312 S.W.3d 673, 675 (Tex.
App.Houston [1st Dist.] 2009, pet. refd). 
The statute defines three ways in which an appropriation is unlawful,
including without the owners effective consent.  Tex.
Penal Code Ann. § 31.03(b) (West Supp. 2011); King v. State, 174 S.W.3d 796, 809 (Tex. App.Corpus Christi 2005,
pet. refd). Consent is not effective if induced by deception or coercion.  Tex.
Penal Code Ann. §
31.01(3)(A) (West Supp. 2011).  The Texas
Penal Code defines deception as, among other things, creating or confirming
by words or conduct a false impression of law or fact that is likely to affect
the judgment of another in the transaction, and that the actor does not believe
to be true.  Tex. Penal Code Ann. § 31.01(1)(A) (West Supp. 2011 ).[12]
 When relevant at all in a prosecution
for theft, however, deception goes to circumstances surrounding the conduct
of the accused, in that deception operates to render otherwise apparent consent
ineffective.  Cheney v. State, 755 S.W.2d 123, 129 (Tex. Crim. App. 1988); Skillern v. State, 890 S.W.2d 849, 871
(Tex. App.Austin 1994, pet. refd).  In
other words, when a defendant is charged with theft by deception, consent must
be induced by deception.  In such a
circumstance, the consent given is ineffective.[13]  

            Here,
Bozeman never obtained Hobsons consent, effective or otherwise, to appropriate
her jewelry.  Bozeman may have acted
deceptively in tricking Hobson into leaving the premises, but this was solely
for the purpose of affording Bozeman the opportunity to unlawfully acquire
control over the items of jewelry he deposited at Charles Dickens jewelry
store in Palestine the following day. 
Bozemans deception cannot be said to have in any way induced Hobson
into consenting to hand her jewelry over to him.   In viewing the evidence of deception in the
light most favorable to the trial courts verdict, a rational fact-finder could
not have found that Bozeman unlawfully appropriated Hobsons jewelry by means
of obtaining consent by deception. 
Accordingly, we are compelled to conclude that the evidence is legally
insufficient to support a finding of theft by deception.[14]  We sustain Bozemans first point of
error.  

            Because we
find the evidence is legally insufficient to support the verdict, we do not
address Bozemans second point of error, complaining of the sufficiency of the
evidence to support the jewelrys value. 


III.       CONCLUSION         

 

            We reverse the judgment of the trial
court and render a judgment of acquittal because there is legally insufficient
evidence of theft by deception.

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          January
11, 2012         

Date Decided:             January
12, 2012

 

Do Not Publish











[1]Tex. Penal Code Ann. § 31.03 (West
Supp. 2011).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann.
§ 73.001 (West 2005).  We are unaware of
any conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[3]Others
helped with the move; Hobson hired Consuelo Venezuela and Christopher Lopez to
help pack.  Bozeman testified that Donald
Davis accompanied him to Hobsons house to assist with the move.  

 





[4]Bozeman
claims that he never saw a jewelry box while assisting with the move.

 





[5]According
to Bozeman, Hobson was aware of his appointment with the manager at Lowes on
the 18th.  

 





[6]Bozeman
was not charged with the theft of these items. 





[7]Even
though no jury charge was given, we nevertheless employ this analysis to
determine the legal sufficiency of the evidence.  Malik, 953 S.W.2d at 240 (the Malik
test applies to nonjury or bench trials).

 





[8]In
his second point of error, Bozeman complains of the sufficiency of proof
regarding the value of the items he was convicted of stealing.  





[9]In
Geesa v. State, 820 S.W.2d 154, 159
(Tex. Crim. App. 1991), overruled on
other grounds by Paulson v. State,
28 S.W.3d 570 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals
expressly disavowed the reasonable hypothesis analytical construct for legal
sufficiency reviews.  





[10]In
our original opinion, we found that based on the hypothetically correct jury
charge, the evidence was sufficient to prove Bozeman committed the offense of
theft.  Bozeman, 340 S.W.3d at 523.





[11]Unlike
Geick, the instant case was tried to
the court.  





[12]Deception
is further defined as failing to correct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, that the
actor previously created or confirmed by words or conduct, and that the actor
does not now believe to be true.  Tex. Penal Code Ann. § 31.01(1)(B)
(West Supp. 2011).

 





[13]Effective
consent includes consent by a person legally authorized to act for the owner.  Consent is not effective if: (A) induced by
deception or coercion . . . . Tex.
Penal Code Ann. § 31.01(3)(A).

 





[14]Had
the indictment in this case merely alleged Bozeman unlawfully appropriated
property with the intent to deprive the owner of property, such allegation
would be the law authorized by the indictment for purposes of the
hypothetically correct jury charge.  See Geick, 349 S.W.3d at 546.  In that case, it would have been unnecessary
to prove the element of deception and the evidence would have then been legally
sufficient to support the verdict.